William R. PABST, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–85–0437–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 30, 1986.

L.T. Bradt, David R. Lee, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., William J. Delmore, III and Russell Turbeville, Harris County Asst. Dist. Attys., Houston, for appellee.

DUNN, SAM BASS and COHEN, JJ.

## OPINION

DUNN, Justice.

A jury found appellant guilty of theft by deception and assessed his punishment at 10 years confinement and a $10,000 fine. We affirm.

Paragraph 1 of the indictment alleged that, on or about November 5, 1982, appellant acquired and otherwise exercised control over money owned by Eugene Wilson, a person having a greater right of possession than appellant, of the value of $10,000, with the intent to deprive Wilson of the property, and without Wilson's effective consent, namely, by deception. Paragraphs 2 and 3 are identical, and differ from paragraph 1 only in the allegations that the offenses occurred on December 31, 1982, and that the value of the money acquired by appellant's deception was over $10,000.

The court's charge to the jury required them to find appellant guilty only if all three of the alleged thefts were proven to have been committed pursuant to one scheme and continuing course of conduct. *See* Tex.Penal Code Ann. sec. 31.09 (Vernon 1974).

At the time of trial, the State's witness Larry White, was awaiting the assessment of punishment for his participation in the offense. White, an employee of the Atlantic Richfield Company ("ARCO"), was indicted as appellant's co-defendant, and entered a guilty plea.

White testified that he first met appellant at the offices of the Centre for the Independence of Judges and Lawyers ("CIJL") in Houston. Appellant introduced himself as the president of CIJL. White stated that he initiated contact with CIJL with the intent to "become involved in an organization that had goals similar to goals [he] had pursued in other organizations, but at the same time, obtain the benefit of tax-exempt status." He arranged to meet with appellant and Vance Beaudreau, a fundraiser for CIJL, at CIJL's Houston office, on October 2, 1982. The record shows that it was during this meeting that appellant, together with Beaudreau and White, arranged for White to be named "program director" of a newly created subsidiary of CIJL named the North Texas Human Rights Foundation ("NTHRF"). Funds would be transferred from CIJL to NTHRF, and White, as director, would

lease his home and auto to NTHRF and benefit thereby. According to White, Beaudreau agreed to use his position as director of another charitable foundation, the Lincoln Foundation, to obtain "research grants" for White. White would then donate the money received from the Lincoln Foundation to CIJL, and appellant would then request matching funds from the Atlantic Richfield Foundation.

The complainant, Eugene Wilson, President of Atlantic Richfield Foundation ("ARF"), a public benefit corporation, testified that ARF administered a program whereby Atlantic Richfield Company ("ARCO") employees' charitable donations were matched on a two-for-one basis.

White, with an annual salary of $29,000 per year from ARCO, signed a pledge to donate $19,000 to CIJL during 1982. White's first donation of $5,000 to CIJL was made on October 2, 1982, from his own money. Soon thereafter, CIJL began depositing funds in excess of $5,000 in White's newly-opened NTHRF account. White's first donation of $5,000 was submitted to ARF by appellant and White, for matching funds in the amount of $10,000 on November 5, 1982. The matching funds request form, signed by appellant, contained a certification that the ARCO employee's contribution was in no way a fee for services, and that the contribution was a voluntary charitable donation.

Following receipt of ARF's $10,000, CIJL transferred funds in the amounts of $8,000 and $6,000 to the Lincoln Foundation that, in turn, gave NTHRF grants in the amount of $8,000 and $6,000 for research into "cleft palate anomalies" in China and the U.S.S.R. White then made contributions to CIJL of $6,300 and $8,000. Matching funds in the amounts of $12,600 and $16,000 were requested from ARF by appellant and White on December 31, 1982.

In his first point of error, appellant contends that the trial court committed reversible error in not suppressing the fruits of the search warrant executed on April 22, 1983. The warrant commanded the search of:

a suite of offices located at 9301 S.W. Freeway, Suite 200, Houston, Harris County, Texas, said offices being in the possession of one Vance Beaudreau and one William Richard Pabst, with authority to seize all records, books, and annual reports on the financial activities of the Centre for the Independence of Judges and Lawyers of the United States, Inc.

Appellant specifically argues that this evidence was obtained in violation of his rights under the fourth amendment as well as under article I, section 9 of the Texas Constitution. The initial question is whether appellant has standing to complain of the search.

■ The fourth amendment guarantees that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." The Supreme Court has made it clear that standing to claim the protection of the fourth amendment depends not upon a property right in the invaded area, but upon whether the area was one in which there was a legitimate expectation of privacy. *See Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1979).

Tex.Rev.Civ.Stat.Ann. art. 1396–2.23A (Vernon 1980), imposes the following obligation on a non-profit corporation, such as the CIJL, operating in Texas:

All records, books, and annual reports of the financial activity of the corporation should be kept at the registered office or principal office of the corporation in this state for at least three years after the closing of each fiscal year and shall be available to the public for inspection and copying there during normal business hours.

We observe that the search warrant tracked this statutory language, and that the materials ordered seized were the financial records of the CIJL, and were not appellant's private papers.

■ There is no legitimate "expectation of privacy" in records, books, and reports of the financial activity of an organization that are available to the public for inspection and copying. As the Court stressed in *Katz v. U.S.*, "what a person knowingly exposes to the public ... is not a subject of Fourth Amendment protection." 389 U.S. 347, 351, 88 S.Ct. 507, 510, 19 L.Ed.2d 576 (1967). The fourth amendment does not prohibit the obtaining of information that is available to the public, and subject to governmental authority and regulation. *See United States v. Miller*, 425 U.S. 435, 96 S.Ct. 1619, 48 L.Ed.2d 71 (1976).

We find that there was no intrusion into any area in which appellant had a potential fourth amendment interest, and that the trial court correctly denied appellant's motion to suppress under both the U.S. and Texas Constitutions.

We overrule appellant's first point of error.

Appellant's second point of error alleges that the trial court committed reversible error in denying his motion to compel discovery. He complains that the Harris County District Attorney's Office would not allow him, or his counsel, to examine the "approximately 75,000 some odd items" that had been seized under the search warrant, without some member of the District Attorney's staff being present. Appellant objects to this as an invasion of the attorney-client privilege and also as an interference with his right to effective assistance of counsel. Appellant cites no authority for these propositions.

The record reflects that appellant was permitted the use of a large conference room containing the documents in question, and that a member of the District Attorney's staff occupied one corner of that room. A photo-copier was located nearby. Appellant and his counsel were permitted to leave the conference room and return at will, should the need to confer in privacy arise.

■ We find that the Harris County District Attorney's Office complied with the requirements of Tex.Code Crim.P.Ann. art. 39.14 (Vernon 1979). This statute, while requiring the State to produce and permit

the copying of papers, books, and accounts that constitute material evidence, provides that "nothing in this Act shall authorize the removal of such evidence from the possession of the State, and any inspection shall be in the presence of a representative of the State."

We overrule appellant's second point of error.

Appellant's third point of error claims that there is insufficient corroboration of accomplice White's testimony.

■ The test of the sufficiency of an accomplice's corroborating evidence requires the elimination from consideration of the accomplice witness' testimony, and the examination of the remainder of the evidence to determine whether there is inculpatory evidence that tends to connect the defendant with the commission of the offense. The evidence is sufficient if there is other evidence of an incriminating nature. *Hardesty v. State*, 656 S.W.2d 73, 76 (Tex.Crim.App.1983). · The corroborative evidence need not directly link the accused to the crime, or be sufficient in itself to establish guilt. The corroboration need only make the accomplice's testimony more likely than not. *Carrillo v. State*, 591 S.W.2d 876, 883 (Tex.Crim.App.1979).

When White's testimony is eliminated from consideration, the record contains the complainant's identification of appellant's request for matching funds from ARF and three checks issued by ARF to CIJL, pursuant to those requests. The matching fund requests were signed by appellant in his capacity as president of CIJL, and a qualified documents examiner testified that, in his expert opinion, the signatures appearing on them were the same as the sample of appellant's handwriting provided by him in the presence of a grand jury. Bank records documenting the complex financial transactions described by White were also admitted into evidence.

■ We find that the evidence documenting appellant's scheme to defraud ARF of charitable donations sufficiently corroborated White's accomplice testimony, and

further, directly connected appellant to the commission of this offense.

We overrule appellant's third point of error.

In his fourth point of error, appellant alleges that the evidence is insufficient to support his conviction, because White's testimony that he "purchased" a subsidiary of CIJL was hearsay. He argues that the word "purchase" was the choice of an attorney, and not that of White himself.

The facts show that White "obtained" the NTHRF in return for his pledge and initial donation to CIJL. Whatever verb is used to describe White's acquisition of the NTHRF, the facts reveal that White expected benefits in return for his contribution, and that therefore, the contribution was not charitable.

■ We find that the evidence is sufficient to support appellant's conviction, and we overrule his fourth point of error.

Appellant's fifth point of error complains that the trial court committed reversible error in denying his motion to set aside the indictment for failure to grant a speedy trial.

The record contains a waiver of speedy trial, signed by appellant on September 28, 1983. The case proceeded to trial on May 14, 1985. Appellant has failed to demonstrate why his affirmative waiver of speedy trial should not be honored.

We overrule appellant's fifth point of error.

In appellant's sixth point of error, he contends that the trial court erred in admitting, over objection, evidence that was returned from the federal grand jury in Tyler, Texas. He specifically complains that the documents seized under the terms of the search warrant were "unlawfully obtained" under Tex.Code Crim.P.Ann. art. 38.23 (Vernon 1979), because the record does not reflect that the provisions of Federal Rule of Criminal Procedure 6(e) were complied with prior to the return of the evidence to the Harris County District Attorney.

Nothing is presented for our review, because appellant failed to invoke the provisions of article 38.23 at trial. *Nelson v. State,* 607 S.W.2d 554, 555 (Tex.Crim.App. 1980).

Appellant's sixth point of error is overruled.

Appellant's seventh point of error alleges that counsel for the State impermissibly referred to appellant's failure to testify. He bases his allegation upon the prosecutor's references during jury argument at the guilt stage to Vance Beaudreau's failure to testify.

Again, nothing is preserved for review. Appellant failed to object to the allegedly improper argument at trial. *Borgen v. State,* 672 S.W.2d 456 (Tex.Crim.App.1984).

We overrule appellant's seventh point of error.

Appellant's eighth point of error fails to comply with Tex.Code Crim.P.Ann. art. 40.-09, sec. 9 (Vernon Supp.1986).

He complains that, "at several points during the trial, counsel for the State engaged in what can most clearly be understood as improper jury argument." A ground of error that does not refer to the record in such a way that points of objection can be clearly identified and understood will not be considered by the reviewing court. *Brown v. State,* 605 S.W.2d 572 (Tex.Crim.App.1980).

Appellant's eighth point of error is overruled.

In his ninth point of error, appellant contends that the trial court erred in not requiring the State to provide him with White's grand jury testimony for cross-examination purposes, per the court's pre-trial order. Appellant urges that this caused him surprise at trial, and denied him effective assistance of counsel.

We note from the record that appellant received a transcript of White's testimony as soon as it was requested. A short recess was held at that time. His attorney did not request additional time to study the transcript, and used it extensively in White's cross-examination. The record does not reveal harm to appellant.

We overrule appellant's ninth ground of error.

In his tenth point of error, appellant claims that the trial court erred in failing to "direct a verdict of acquittal."

First, he argues that the evidence is insufficient to show that he *personally* appropriated ARF funds. The Texas Penal Code defines "appropriate" as "acquiring or otherwise exercising control over property other than real property." Tex.Pen. Code Ann. sec. 31.01(5)(B) (Vernon's Supp. 1986).

We find that the evidence was sufficient to show that appellant personally acquired and exercised control over ARF funds. As noted above, appellant's signature appeared on the matching gift request forms, and testimony revealed that appellant's approval was required on all "financial decisions" of the CIJL.

Appellant next complains that the State failed to demonstrate the requisite mental state to justify his theft conviction. The culpable mental state for a theft offense is the intent to deprive the owner of his property. Tex.Pen.Code Ann. secs. 31.01(3), 31.03(a) (Vernon 1974). The evidence shows that appellant fraudulently solicited matching gifts from ARF, deposited the funds in the CIJL bank account, and exercised control over the funds by issuing checks on that bank account. We find that appellant harbored the requisite intent to deprive the owner of the property.

Appellant contends that the complainant, Eugene Wilson, was not shown to be the "owner" of the ARF funds. Tex.Penal Code Ann. sec. 1.07(a)(24) (Vernon 1974) defines "owner" as a person who has title to the property, possession of the property, or a greater right to possession of the property than the actor. The complainant testified that, as president of ARF, he had "care, custody, and control of the funds of that organization." We find that the evidence is sufficient to establish the complainant's ownership of the ARF funds.

Appellant's allegation that the evidence was insufficient regarding White's "purchase" of a subsidiary of the CIJL has been addressed and answered under appellant's fourth point of error.

We overrule appellant's tenth point of error.

In appellant's eleventh point of error, he urges that the ARF funds were not shown to have been obtained without its effective consent.

We find that the State adequately proved its theory that the ARF's consent to match funds was induced by the deception of White and appellant, i.e., the false claim that White's donations to the CIJL were "voluntary charitable contributions," and that they were in "no way a fee for service."

Appellant's eleventh point of error is overruled.

In point of error 12, appellant attacks the sufficiency of the evidence, and asserts that the State failed to prove his "intention to wrongfully obtain" the ARF funds.

The requisite mental state for the offense of theft was discussed under appellant's tenth point of error, above, and an "intention to wrongfully obtain" is not a element of the offense.

We overrule appellant's twelfth point of error.

Appellant's thirteenth point of error seems to combine a complaint regarding the sufficiency of the evidence and an attack on the constitutionality of Texas Penal Code Ann. sec. 31.01. Specifically, appellant argues that the evidence failed to establish one of the two thefts alleged to have been committed on December 31, 1982, because of the State's failure to show that the $8,000 research grant was provided by the CIJL to the Lincoln Foundation. However, the only issue before this Court is whether the December 31, 1982, matching gifts from the ARF were induced by appellant's deception. We conclude that the record supports a finding that appellant knew that White's donations to CIJL were not "voluntary charitable contributions."

We overrule appellant's thirteenth point of error.

In his fourteenth point of error, appellant contends that the trial court improperly refused to sustain his motion to quash the indictment and his motion for a bill of particulars.

██ Appellant argues that the indictment failed to specify in any form what specific acts appellant was alleged to have committed, so as to complete the crime for which he was charged. The indictment, charging theft by deception, alleged that the appellant acquired and otherwise exercised control over property other than 'real property is within the appropriate statutory definition. Tex.Penal Code Ann. sec. 31.-01(5)(B). We find that the State adequately alleged the manner and means of the commission of the offense of theft.

We overrule the fourteenth point of error.

In his fifteenth and final point of error, appellant apparently urges that, if he is guilty, he is guilty only to the extent that White's donations to the CIJL were in fact compensated by the flow of monies back to White. Therefore, appellant claims that he could not have stolen more than $10,000 on any of the three occasions alleged in the indictment.

Again, the issue before this Court is whether the matching funds from the ARF were obtained by appellant's deception. We note that the record supports a finding that a total of $38,600 was obtained as a result of appellant's misrepresentations that White made "voluntary charitable contributions" to the CIJL. We overrule his fifteenth point of error.

The judgment of the trial court is affirmed.